**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

**SHANE OWEN STEWART,**            :

                   **Petitioner**            :      **CIVIL ACTION NO. 3:17-0893**

**v.**                                :            **(JUDGE MANNION)**

**TAMMY FERGUSON,**                   :

                   **Respondent**            :


**MEMORANDUM**

Petitioner, Shane Owen Stewart, an inmate confined in the Benner State Correctional Institution, Bellefonte, Pennsylvania, filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. §2254. (Doc. 1). He challenges his conviction and sentence imposed in the Court of Common Pleas of York County. Id. The petition is ripe for disposition. For the reasons outlined below, the petition will be denied.


I.    **Factual and Procedural Background**

The facts underlying Stewart's conviction are contained in the Pennsylvania Superior Court's April 20, 2016 Memorandum Opinion, affirming the denial of Stewart's petition filed pursuant to the Post Conviction

Relief Act (PCRA), 42 Pa.C.S. §§9541-9546. (Doc. 13-1 at 354). These facts are as follows:

> This Court previously set forth the following relevant facts:
>
>> On October 14, 2011, at approximately 10:55 a.m., Denise Miller ('the victim"), was home alone at the residence in Fawn Township, York County, that she shared with her sister and brother-in-law. As she exited her residence, she was confronted by [Stewart,] who was wearing a ski mask, dark clothes and gloves, and who forced his way into the residence. [Stewart] pointed a gun at the victim's face and asked where her nephew and his girlfriend were, because they owed him money. After the victim resisted, and attempted to push the gun away, [Stewart] forced her into a downstairs bathroom, and blocked the exit with a chair. The victim then heart [Stewart] run upstairs. After approximately ten minutes, when the victim heard no more sounds, she was able to exit the bathroom, and went to a neighbor's house to call the police. The subsequent police investigation revealed that [Stewart] had stolen a .22 caliber Ruger semiautomatic pistol and ammunition from the victim's residence. At trial, the victim testified that she recognized [Stewart's] voice because she had interacted with him previously when he performed odd jobs around her residence. [Stewart's] friend, Felicia Asbury ["Asbury,"] informed police that she had driven [Stewart] to the victim's house at approximately 10:00 a.m. on October 14, 2011, and that she waited in the car for approximately five minutes while [Stewart] walked toward the residence. She [Stewart] returned, he was carrying a dark-colored bag and appeared agitated.

> Commonwealth v. Stewart, 91 A.3d 1289 (Pa. Super. 2013) (unpublished memorandum at 1-2). Following a jury trial, Stewart was convicted of burglary, robbery, theft by unlawful taking, receiving stolen property, criminal trespass, terroristic threats,

possession instrument of a crime, false imprisonment, and simple assault.[1] The trial court sentenced Stewart to an aggregate prison term of 16 to 32 years. Stewart filed a post-sentence Motion, which the trial court denied.

This Court affirmed Stewart's judgment of sentence in November 2013,[2] and the Pennsylvania Supreme Court denied his Petition for Allowance of Appeal. See Stewart, 91 A.3d 1289, *appeal denied*, 89 A.3d 1285 (Pa. 2014).

In November, 2014, Stewart, *pro se*, filed a timely PCRA petition. The PCRA court appointed Stewart counsel, who thereafter filed an Amendment PCRA Petition.[3] Following a hearing, the PCRA court denied Stewart's Petition. Stewart filed a timely Notice of Appeal and a court-ordered Pennsylvania Rule of Appellate Procedure 1925(b) Concise Statement of Matters Complained of on Appeal.[4]

On appeal, Stewart raises the following claims for our review:

> I.  Did the PCRA court err by holding that trial counsel was not ineffective for failing to present the testimony or report of a state trooper to whom the victim could not identify the perpetrator immediately after the crime occurred?

> II.  Did the PCRA court err by holding that trial counsel was not ineffective for failing to present evidence that [Stewart's] eyes are blue, where the victim insisted that the perpetrator's eyes are "dark?"

---

[1] 18 Pa.C.S.A. §§3501, 3701(a)(1)(ii), 3921(a), 3925(a), 3503(a)(1)(i), 2706(a)(1), 907(b), 2903 and 2701.

[2] Stewart raised three claims of trial court error in his direct appeal. (Doc. 13-1 at 212).

[3] Stewart raised four claims of trial counsel ineffectiveness in his PCRA petition. (Doc. 13-1 at 319-326).

[4] Stewart raised two claims of PCRA court error in his concise statement of matters complained of on appeal. (Doc. 13-1 at 302).

Brief for Appellant at 4.

(Doc. 13-1 at 354-356, Pennsylvania Superior Court Memorandum Opinion). On April 20, 2016, the Pennsylvania Superior Court affirmed the PCRA court's order denying Stewart's PCRA petition. Id.

On September 27, 2016, the Pennsylvania Supreme Court denied Stewart's Petition for Allowance of Appeal. (Doc. 13-1 at 360).

On May 19, 2017, Petitioner filed the instant petition for writ of habeas corpus, in which he raises the following ineffective assistance of counsel claims for review:

1. Trial counsel failed to request a pretrial lineup.

2. Trial counsel failed to call witnesses.

3. PCRA counsel was ineffective for failing to raise confrontation claim.

4. PCRA counsel ineffective for failing to raise ineffectiveness of trial counsel regarding admission of a police report.

5. Trial counsel failed to object to evidence of prior bad acts.

(Doc. 2, Memorandum of Law).

## II.  **Legal Standards of Review**

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law." Harrington v. Richter, 562

U.S. 86, 91 (2011). Federal courts reviewing habeas corpus petitions "must be vigilant and independent ... a commitment that entails substantial judicial resources." Id. When reviewing, under 28 U.S.C. §2254, the constitutionality of a state prisoner's conviction and sentence, federal habeas courts "are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism." Martinez v. Ryan, 566 U.S. 1, 9 (2012).

    A. <u>Federal Habeas Review of Properly Exhausted Claims</u>

    The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. §§2241–2254, mandates that petitioners demonstrate that they have "exhausted the remedies available in the courts of the State" before seeking federal habeas relief. 28 U.S.C. §2254(b)(1)(A). An exhausted claim is one that has been "fairly presented" to the state courts "by invoking one complete round of the State's established appellate review process," and which has been adjudicated on the merits. See Carpenter v. Vaughn, 296 F.3d 138, 146 (3d Cir. 2002) (quoting O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999)); Johnson v. Williams, 568 U.S. 289, 302 (2013). "Fair presentation" of a claim merely requires the petitioner to "present [the] federal claim's factual and legal substance to the state courts in a manner

that puts them on notice that a federal claim is being asserted." Greene v. Palakovich, 606 F.3d 85, 93 (3d Cir. 2010) (citation omitted). For §2254(d) purposes, a claim has been adjudicated on the merits "when a state court has made a decision that finally resolves the claim on the basis of its substance, rather than on a procedural, or other, ground." Collins v. Sec'y of Pa. Dep't of Corr., 742 F.3d 528, 545 (3d Cir. 2014) (quoting Thomas v. Horn, 570 F.3d 105, 117 (3d Cir. 2009)).

When a claim is properly exhausted in the state courts and then raised on federal habeas review, the level of deference afforded to the state-court decision is substantial. Bey v. Superintendent Greene SCI, 856 F.3d 230, 236 (3d Cir. 2017), petition for cert. filed sub nom., Gilmore v. Bey, No. 17-681 (U.S. Nov. 8, 2017). The AEDPA "does not 'permit federal judges to ... casually second-guess the decisions of their state-court colleagues or defense attorneys.' " Collins, 742 F.3d at 543 (quoting Burt v. Titlow, 134 S. Ct. 10, 13 (2013)). Accordingly, under §2254(d), federal habeas relief is unavailable for exhausted claims unless the state-court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law ... or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d).

This is an intentionally difficult standard to meet. Richter, 562 U.S. at 102. Section 2254(d) "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" clearly established Supreme Court precedent. Id. Therefore, to obtain federal habeas relief on an exhausted claim, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." Id. at 103.

Finally, "[i]f a claim has been adjudicated on the merits by a state court, a federal habeas petition[er] must overcome the limitation of §2254(d)[ ] on the record that was before that state court"; "evidence introduced in federal court has no bearing on §2254(d)[ ] review." Cullen v. Pinholster, 563 U.S. 170, 185 (2011) (footnote omitted). "[D]istrict courts cannot conduct evidentiary hearings to supplement the existing state court record under 28 U.S.C. §2254(d). Otherwise, federal habeas petitioners would be able to circumvent the finality of state court judgments by establishing a new factual record." Brown v. Wenerowicz, 663 F.3d 619, 629 (3d Cir. 2011). "This would contravene AEDPA, which requires petitioners to diligently present the facts in state court before proceeding to the federal courthouse." Id.

B. Federal Habeas Review of Unexhausted, Defaulted Claims

If a state prisoner has not fairly presented a claim "to the state courts but state law clearly forecloses review, exhaustion is excused, but the doctrine of procedural default may come into play." Carpenter, 296 F.3d at 146 (citations omitted). Generally, if a prisoner has procedurally defaulted on a claim by failing to raise it in state-court proceedings, a federal habeas court will not review the merits of the claim, even one that implicates constitutional concerns. Martinez, 566 U.S. at 9 (citing Coleman v. Thompson, 501 U.S. 722, 747-48 (1991) and Wainwright v. Sykes, 433 U.S. 72, 84-85 (1977)). A few limited exceptions to this rule exist.

One exception is that "[a] prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law." Id. at 10 (citing Coleman, 501 U.S. at 750). "Cause for a procedural default exists where something external to the petitioner, something that cannot fairly be attributed to him[,] ... impeded [his] efforts to comply with the State's procedural rule." Maples v. Thomas, 565 U.S. 266, 280 (2012) (alterations in original) (citations and internal quotation marks omitted). To establish prejudice, a petitioner must show not merely that there were errors that created a possibility of prejudice, but that they "worked to his actual and substantial disadvantage, infecting his entire trial with error of

constitutional dimensions." Holland v. Horn, 519 F.3d 107, 112 (3d Cir. 2008) (quoting United States v. Frady, 456 U.S. 152, 170 (1982)). If cause and prejudice are established, the federal court reviews the claim "*de novo* because the state court did not consider the claim on the merits." Bey, 856 F.3d at 236 (citation omitted).

Another rare exception that will excuse a procedural default is if the petitioner can show that "failure to consider the claim will result in a fundamental 'miscarriage of justice.' " Carpenter, 296 F.3d at 146 (quoting Coleman, 501 U.S. at 750). To satisfy the "fundamental miscarriage of justice" exception, a petitioner typically will have to show actual innocence. Leyva v. Williams, 504 F.3d 357, 366 (3d Cir. 2007) (citation omitted).

C. Ineffective Assistance of Counsel Claims, Generally

All of Stewart's claims assert ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution. It is firmly established that claims of ineffective assistance of counsel are governed by Strickland v. Washington, 466 U.S. 668 (1984). The burden is on the defendant to prove such a claim. Strickland, 466 U.S. at 687.

Strickland sets forth a two-prong test to assess claims of ineffective assistance of counsel. First, counsel's performance must be deficient. Jacobs v. Horn, 395 F.3d 92, 102 (3d Cir. 2005) (citing Strickland, 466 U.S.

at 687). "Performance is deficient if counsel's efforts 'fell below an objective standard of reasonableness' under 'prevailing professional norms.' " Shotts v. Wetzel, 724 F.3d 364, 375 (3d Cir. 2013) (quoting Strickland, 466 U.S. at 688). However, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Grant v. Lockett, 709 F.3d 224, 234 (3d Cir. 2013) (quoting Strickland, 466 U.S. at 689).

Second, counsel's deficient performance must have prejudiced the defendant. Jacobs, 395 F.3d at 105 (citing Strickland, 466 U.S. at 692). "To demonstrate prejudice, 'a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " Shotts, 724 F.3d at 375 (quoting Strickland, 466 U.S. at 694).

D.  Martinez Exception—Ineffectiveness of Initial-Review Collateral Counsel

In Coleman, the Supreme Court held that ineffectiveness of post-conviction counsel does not qualify as "cause" to excuse procedural default that occurs in those proceedings, as there is "no constitutional right to an attorney in state post-conviction proceedings." Coleman, 501 U.S. at 752. In

Martinez, however, the Court provided a narrow exception to this rule. There, the Court held that:

> [w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding ... counsel in that proceeding was ineffective.

Martinez, 566 U.S. at 17. Pennsylvania is such a state with a bright-line rule that requires ineffective-assistance-of-counsel claims to be raised on collateral review. See Cox v. Horn, 757 F.3d 113, 124 n.8 (3d Cir. 2014) (citing Commonwealth v. Grant, 813 A.2d 726, 738 (Pa. 2002)). Thus, under Martinez, "counsel's failure to raise an ineffective assistance [of trial counsel] claim on collateral review may excuse a procedural default if: (1) collateral attack counsel's failure itself constituted ineffective assistance of counsel under Strickland, and (2) the underlying ineffective assistance claim is a substantial one." Bey, 856 F.3d at 237-38.

Therefore, in the instant case, ineffectiveness of initial-review PCRA counsel can qualify as "cause" to excuse a procedural default of a claim of ineffective assistance of trial counsel, so long as that defaulted claim is substantial. A "substantial" claim is one that "has some merit." Martinez, 566 U.S. at 14. Notably, the Supreme Court of the United States has explicitly rejected the extension of the Martinez exception to underlying claims of

- 11 -

ineffective assistance of direct-appeal counsel. Davila v. Davis, 137 S. Ct. 2058, 2065 (2017).

      E. "Doubly" Deferential Standard Applied Under 28 U.S.C. § 2254(d) to Exhausted Ineffective-Assistance-of-Counsel Claims

      When a claim of ineffective assistance of counsel has been exhausted in state court, review of that claim by a federal habeas court is significantly circumscribed. The federal court does not review the Strickland claim *de novo*; rather, "[t]he pivotal question is whether the state court's application of the Strickland standard was unreasonable." Richter, 562 U.S. at 101; Collins, 742 F.3d at 547-48. As such, "so long as fairminded jurists could disagree on the correctness of the state court's decision," a state court's determination that a Strickland claim lacks merit precludes federal habeas relief. Id.

## III.    Discussion

      Stewart raises five claims for relief. Each ground will be addressed seriatim, below.

### 1. Failure to Request a Pretrial Lineup

      Stewart claims that trial counsel was ineffective for failing to request a pretrial lineup, claiming that "he was not identified by the victim Denise Miller prior to trial but instead, made an in-court identification of him at the

preliminary hearing", preventing him from "obtaining a fair trial." (Doc. 2 at 8). The Respondent claims that this issue, while raised by counsel in Stewart's initial PCRA petition, was not raised by Petitioner on appeal, and thus is procedurally defaulted as unexhausted. (Doc. 13 at 13).

> The PCRA Court found this claim without merit as follow:
>
> Defendant's trial counsel testified at the PCRA hearing that, where both victims and witnesses were familiar with Defendant, he believed that if a pre-trial lineup and voice identification occurred, the victims and witnesses may have identified Defendant on that basis alone. Trial counsel felt such an identification would only have worked to bolster the Commonwealth's case.
>
> Therefore, this Court finds trial counsel had a reasonable basis for declining to request an out-of-court lineup and voice identification.

(Doc. 13-1 at 323).

Petitioner must demonstrate that his counsel's deficient performance prejudiced the defense. Strickland, 466 U.S. at 687. To establish prejudice, the Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different." Id. at 694. Petitioner has failed to prove that had pre-trial counsel requested a lineup, the result of Petitioner's trial would have been different. Petitioner cannot show that he was prejudiced by the lack of a lineup identification by Ms. Miller. Thus, trial counsel cannot be found ineffective for

failing to request said lineup. Based on the foregoing, we find that the underlying otherwise defaulted claim of trial counsel's failure to request a pre-trial lineup lacks some merit. Stewart therefore fails to meet his burden under <u>Martinez.</u> Petitioner's first claim is procedurally defaulted.

2. Failure to Call Witnesses

a. <u>Grace Passapae</u>

Petitioner claims that trial counsel was ineffective for failing to "obtain the testimony of his ex-girlfriend Grace Passapae who was romantically involved with Felicia Asbury, to provide a motive for Asbury's false testimony against the Petitioner. (Doc. 2 at 12).  Petitioner claims that "at trial, [he] provided counsel with a Facebook post by Asbury to Grace which stated: 'Sorry I had to do it like that, but at least he is out of our lives now'." <u>Id</u>. He believes that "this would have provided a motive for Asbury's testimony and would have effectively impeached her claim to have driven the Petitioner to the house in question." <u>Id</u>. Again, while raised by counsel in Stewart's initial PCRA petition, it was not raised by Petitioner on appeal, and thus is procedurally defaulted as unexhausted. (Doc. 13 at 12).

In Pennsylvania, to prevail on a claim of ineffective assistance of trial counsel for failure to call a witness, the appellant must show:

(1) that the witness existed; (2) that the witness was available; (3) that counsel was informed of the existence of the witness or

- 14 -

should have known of the witness's existence; (4) that the witness was prepared to cooperate and would have testified on appellant's behalf; and (5) that the absence of the testimony prejudiced appellant.

Commonwealth. v. Fulton, 830 A.2d 567, 572 (Pa. 2003) (citations omitted). Although this standard is not identical to the Strickland standard, the Third Circuit has held that "the Pennsylvania test is not contrary to the test set forth in Strickland." Moore v. DiGuglielmo, 489 Fed.App'x. 618, 626 (3d Cir. 2012) ("The five requirements set forth by the Pennsylvania Supreme Court would necessarily need to be shown to prevail under Strickland on a claim of this nature.") Petitioner did not meet his burden. See Rolan v. Vaughn, 445 F.3d 671, 681 (3d Cir. 2006) (finding a trial attorney ineffective for failing to investigate a self-defense witness who gave testimony and submitted an affidavit establishing his willingness to testify on behalf of Petitioner). Even if trial counsel should have called said witnesses on Petitioner's behalf,[5] Petitioner must show that absence of the testimony prejudiced Petitioner and

---

[5] As the Court in Porter v. Horn, 276 F. Supp. 2d 278 (E.D. Pa. 2003) made clear:

Attorneys are not required to call every witness suggested to them; their expertise leads them to choose only the witnesses likely to assist the case. Indeed, this is precisely the type of strategic decision which the Court in Strickland held to be protected from second-guessing. In order to support a charge of inadequate representation, mere criticism of a tactic or strategy is not in itself sufficient.

Id. at 355–56 (internal quotations and citations omitted).

that the outcome at trial would have been different. <u>Fulton</u>, 830 A.2d at 291;
Lewis v. Mazurkiewicz, 915 F.2d 106, 115 (3d Cir. 1990).

The PCRA court found that the "testimony of Grace Passapae, while it
might have shown personal animus, might have also yielded other
unforeseeable damaging testimony." (Doc. 13-1 at 324). Thus, the PCRA
court found that trial counsel had a reasonable strategic basis for not calling
Grace Passapae to testify at trial and denied Stewart relief on this basis. <u>Id</u>.
Additionally, the court found the claim denied for want of proof that Grace
Passapae was available to testify at trial. <u>Id</u>.

As is apparent from the PCRA court's decision, trial counsel made the
strategic choice to preclude the testimony of Grace Passapae. Petitioner
does not rebut this. Without more, Petitioner cannot show that he was
prejudiced by the absence of this witness at trial or that trial counsel was
ineffective for not calling said witness. Because the underlying failure to call
Grace Passapae as a witness lacks "some" merit, Stewart fails to satisfy his
burden under <u>Martinez</u>. Federal review of whether trial counsel was
ineffective in failing to call this witness is barred.

### b. <u>Trooper Longenecker</u>

Petitioner claims that trial counsel "failed to secure the testimony of the
responding officer, Trooper Longenecker, who interviewed the victim

immediately following the incident, and wrote the incident report which indicated that a suspect could not be named." (Doc. 2 at 11). Petitioner claims that "Trooper Longenecker identified an entirely difference person, Billy Fallon as Suspect #1." Id. He claims that "no other witness testified at trial as to the designation of Billy Fallon as Suspect #1" and that he "was grossly prejudiced by this negligence." Id.

Petitioner exhausted this claim through the state courts, with the Pennsylvania Superior Court rejecting the claim as follows:

> In his first claim, Stewart argues that trial counsel was ineffective for failing to present either the testimony of Trooper Timothy Longenecker ("Trooper Longenecker") or his police report at trial. Brief for Appellant at 12, 14. Stewart asserts that Trooper Longenecker's testimony is important because he interviewed the victim immediately after the incident and indicated in his report that the victim could not name the suspect. **Id.** at 12, 13-14. Additionally, Stewart claims that Trooper Longenecker identified another individual as the primary suspect, and that no other witness testified regarding another suspect at trial. **Id.** at 12.

>> When raising a claim of ineffectiveness for the failure to call a potential witness, a petitioner satisfies the performance and prejudice requirements of the [ineffectiveness] test by establishing that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial. To demonstrate [] prejudice, a petitioner must show how the uncalled witnesses' testimony would have been beneficial under

- 17 -

the circumstances of the case. Thus, counsel will not be found ineffective for failing to call a witness unless the petitioner can show that the witness's testimony would have been helpful to the defense. A failure to call a witness is not *per se* ineffective assistance of counsel[,] for such decision usually involves matters of trial strategy.

**Commonwealth v. Sneed**, 45 A.3d 1096, 1108-09 (Pa. 2012) (citations and quotation marks omitted).

Here, Stewart failed to prove that Trooper Longenecker was available for trial. See PCRA Court Opinion, 6/10/15, at 9. Additionally, Stewart's claim that Trooper Longenecker would have testified that the victim did not name a suspect immediately following the incident was cumulative to testimony provided by Trooper Christopher Colarusso at trial. See N.T., 11/8/12, at 176. Thus, the fact to which Trooper Longenecker would have testified had already been presented to the jury for consideration, and Stewart could not have suffered prejudice as a result of Trooper Longenecker's absence at trial. See Commonwealth v. Milligan, 693 A.2d 1313, 1319 (Pa. Super. 1997) (stating that "[a]s a general rule, counsel will not be deemed ineffective for failing to call witnesses whose testimony is merely cumulative of that of other witnesses.") (quotations omitted). Accordingly, we cannot grant him relief on this claim.

(Doc. 13-1 at 357-358).

In accordance with <u>Strickland</u>, while "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary,"[6] his or her decision on whether to call a witness is an inherently strategic one. Counsel, therefore, is "not bound by

---

[6] Moore v. DiGuglielmo, 489 F. App'x 618, 625 (3d Cir. 2012) (quoting Strickland, 466 U.S. at 691) (internal quotation marks and brackets omitted).

an inflexible constitutional command to interview every possible witness." Id.
at 625 (quoting Lewis v. Mazurkiewicz, 915 F.2d 106, 113 (3d Cir. 1990).
Rather, he is "simply required to exercise reasonable professional judgment
in deciding whether to interview" the witness. Id.

The Pennsylvania Superior Court's decision was not contrary to or an
unreasonable application of Strickland. The state court concluded that
Petitioner could not show that counsel's failure to call this witness constituted
deficient performance because the record demonstrates that counsel made
a reasonable investigation into the testimony of this witness and made a
strategic decision not to call this witness because his testimony would be
cumulative to testimony provided by Trooper Christopher Colarusso at trial.

Additionally, Petitioner cannot demonstrate that he was prejudiced by
counsel's failure to call this witness. To demonstrate prejudice, Petitioner
"must show that 'there is a reasonable probability that, but for counsel's
unprofessional errors, the result of the proceeding would have been
different'." Albrecht v. Horn, 485 F.3d 103, 127 (3d Cir. 2007) (quoting
Strickland, 466 U.S. at 694). The testimony that Trooper Longenecker would
have offered was already provided to the trial court and the jury through
Trooper Colarusso's testimony. Thus, Petitioner cannot demonstrate that he

was prejudiced by Trooper Longenecker's failure to testify. Accordingly, his claim fails.

### 3. Collateral Counsel Failed to Raise Confrontation Clause

### and

### 4. Trial Counsel Failed to Subject (sic) Exculpatory Evidence

Petitioner claims that the "failure of Trooper Longenecker to testify to the contents of his report violated his 6th Amendment right to confrontation" and that "failure of collateral counsel to raise trial counsel's ineffectiveness regarding this claim constitutes ineffective assistance and such claim is cognizable under Martinez v. Ryan, 132 S.Ct. 1309 (2012)." (Doc. 2 at 12-14). Additionally, Petitioner claims that "to the extent that this Honorable Court finds that no Confrontation issue exists since the report was not admitted into evidence, and/or Trooper Colarusso's testimony did not rise to the level of a 6th Amendment violation, the Petitioner maintains that Trooper Longenecker still should have been called to testify and once he testified, the report could have been admitted as substantive evidence, material to Petitioner's innocence." (Doc. 2 at 15). Petitioner concedes that neither trial counsel, nor PCRA counsel, raised the issues of the Confrontation Clause or submission of Trooper Longenecker's report and, as such, they are defaulted. Id. at 13.

Under Martinez v. Ryan, "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial counsel if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." 566 U.S. 1, 17 (2012). Thus, Petitioner must show that he has a "substantial" issue within the meaning of Martinez. He cannot. "[W]hether a claim is 'substantial' is a 'threshold inquiry' that 'does not require full consideration of the factual or legal bases adduced in support of the claims.'" Bey v. Superintendent Greene SCI, 856 F.3d 230, 237-38 (3d Cir. 2017).

Stewart claims a Confrontation Clause violation occurred when another trooper, Trooper Colarusso, was permitted to testify regarding some details of the investigation conducted by Trooper Longenecker. The trial transcript reveals that Petitioner's trial attorney not only agreed with the prosecutor that Trooper Colarusso should be permitted to testify, but in fact "requested it," because the testimony would allow him to introduce exculpatory evidence. RRR 99. The specific exchange is as follows:

> ATTORNEY BORTNER: . . .The Commonwealth is going to be calling this morning two witnesses, one of which is going to be Trooper Colarusso.
>
> THE COURT: Okay.
>
> ATTORNEY BORTNER: He would be merely stating what was contained in the report and what's not contained in the report and

just in the interests of time and over the fact that Trooper Longenecker, his appearance wasn't secured and is going to allow Kevin to get into what he wanted to.

THE COURT:  Who is Kevin?

ATTORNEY BORTNER:   I'm sorry, Attorney Hoffman. I apologize, Your Honor.

THE COURT:  All right. Defense, what's your position on this?

ATTORNEY HOFFMAN:  I have no objection to it. I'm the one who requested it.

THE COURT:  Okay. Are we going to have – I guess you can get into it if you want, but the thing that happens when this sort of thing does on, if there was some – in the eyes of the defense – deficient police work, you are going to have a witness who did not do the police work, which didn't you do DNA, why didn't you fly to the moon, or whatever the theory of the defense that they should have done.

ATTORNEY HOFFMAN:  And I understand that, Your Honor, and my only question – and I addressed this to you yesterday – is whether or not they were informed that Shane Stewart was the one that they though perpetrated this crime. That's literally all I'm going to ask him.

THE COURT:  All right. Sounds good? Anything further?

ATTORNEY BORTNER:  No, Your Honor.

(Doc. 13-1 at 99-100).

Thus, to establish a substantial issue, Defendant must show that the outcome of the proceeding would have been different without the testimony, and that his counsel was ineffective for eliciting it. The trial transcript,

however, reveals that trial counsel's decision to utilize the testimony of Trooper Colarusso was strategic, and following a discussion with the prosecutor, reveals that counsel had the opportunity to consider the merits of the strategy.

As the Third Circuit has recognized, "Where an attorney's actions are the result of 'strategic choices' this presumption of reasonableness is even stronger. If the strategic choice is 'made after thorough investigation of the law and facts relevant to plausible options,' the Supreme Court has held that the presumption of reasonableness is essentially irrebuttable." Marshall v. Cathel, 428 F.3d 452, 462-63 (3d Cir. 2005). Here, the testimony to which Petitioner now objects, was actually offered by his counsel, and was used to introduce into evidence the fact that there was "no name of the suspect contained in the report" of Trooper Longenecker's initial investigation. (See Doc. 13-1 at 113). Trial counsel's strategic choice to seek this testimony, regardless of any alleged Confrontation Clause issue, was reasonable, because the extremely limited testimony was actually beneficial to the Petitioner.

Moreover, Petitioner cannot establish a substantial issue because he cannot show prejudice from the trooper's statement that he had not been named in the initial police report. That statement, the only one even relating

to the content of Trooper Longenecker's report, was the answer to Stewart's counsel's own question, did not repeat any statements from the unadmitted report, and is exculpatory for Petitioner. Nor does Petitioner attempt to demonstrate how that testimony could have altered the outcome of the proceedings. Consequently, because there is no substantial claim of ineffective assistance of trial counsel, the default of this issue cannot be excused.

Additionally, Petitioner claims that trial counsel was also ineffective for failing to call Trooper Longenecker in order to admit his report into evidence. Petitioner concedes that this claim has never been raised in state court. However, as discussed above, Petitioner cannot establish that Trooper Longenecker would have been available to testify, and that is the only route by which Petitioner claims that trial counsel should have sought to admit the report. Consequently, this argument fails for the same reasons discussed above, and is barred by AEDPA.

### 5. Prior Bad Acts/Mistrial

Petitioner's final claim is that trial counsel was ineffective for failing object to "references to the Petitioner doing drugs with Commonwealth witness Felicia Asbury, using intravenous needles, daily using heroin together and getting high the day of the incident", which Petitioner claims

"irreparably tainted the jury against him, as it was exposed to evidence that Petitioner was a drug user or addict." (Doc. 2 at 16). Petitioner again concedes that, although this issue was raised by counsel in Petitioner's initial PCRA petition, it was not raised on appeal and is now defaulted. Additionally, Petitioner cannot overcome the default as he cannot show that the issue is "substantial" within the meaning of Martinez.

The PCRA Court rejected Petitioner's claim as follows:

Defendant argues that the introduction of his drug use was impermissible character evidence and, therefore, trial counsel's failure to request a mistrial or an instruction limiting its use was prejudicial. (Defendant's Amended Petition at ¶47.) Further he avers trial counsel had no reasonable basis for not doing so. Id.

Evidence of crimes or bad acts is generally inadmissible to prove character in order to show conformity therewith. Pa.R.E. 404(b)(1). However, such evidence may be admitted for the limited purpose of showing motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Pa.R.E. 404(b)(2).

At trial, the Commonwealth elicited testimony from Felicia Asbury, who was with Defendant on the day of the robbery. (N.T. 11/09/2012 at pp. 155-56.) She testified that she was a heroin user, and that she and Defendant injected heroin together on several occasions. (N.T. 11/09/2012 at pp. 153-54.) Defendant's trial counsel did not object to these references. At the PCRA hearing, trial counsel testified that he believed objecting to Asbury's testimony as to Defendant's drug use testimony was futile; he believed it was admissible to prove motive. Trial counsel testified at the PCRA hearing that his strategy at trial was to discredit the credibility of Felicia Asbury.

Defendant further argues that the PCRA hearing trial counsel should have requested a limiting instruction from the Court on Defendant's drug-related testimony. However, trial counsel testified at the PCRA hearing that the reason he did not seek such an instruction was to prevent the revival of evidence the jury already may have forgotten.

The Court finds that trial counsel had a reasonable strategic basis for choosing not to object to the introduction of evidence relating to Defendant's drug use. Further, the Court finds that trial counsel had a reasonable basis for not requesting a jury instruction limiting the use of the same testimony.

(Doc. 13-1 at 319-321).

The PCRA court found that counsel had a reasonable strategy to not object to the testimony of Asbury, as it was admissible as evidence of motive under Pa.R.E. 404(b)(2). Additionally, the PCRA court found that counsel had a reasonable strategy for choosing not to request a limiting instruction on the use Asbury's testimony.

A federal habeas court is required to accept a state court's interpretation of state law. See Bradshaw v. Richey, 546 U.S. 74, 76 (2005). Additionally, it is well-settled that an attorney does not provide ineffective assistance by failing to raise improper or meritless claims. See Werts v. Vaughn, 228 F.3d 178, 203 (3d Cir. 2000). Given the PCRA court's conclusion that the admission of Petitioner's prior bad acts and bad character evidence did not constitute an error under Pennsylvania evidentiary law, Petitioner cannot demonstrate how he was prejudiced by counsel's failure to

raise meritless objections to the admission of such evidence. In turn, considering that an objection to the prior bad acts/bad character evidence would have been non-meritorious, the state court reasonably concluded that counsel's decision not to request a limiting instruction was a tactical decision designed to de-emphasize the evidence.

Additionally, Petitioner fails to establish that the admission of Asbury's testimony prejudiced him. To establish prejudice the Petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been difference. A reasonable probability is a probability sufficient to undermine confidence in the outcome." McBride v. Superintendent, SCI Houtzdale, 687 F.3d 92, 102 n.11 (quoting Strickland, 466 U.S. 694). Petitioner fails to satisfy the second prong of the Strickland standard. Accordingly, the court concludes that Petitioner's ineffective assistance of counsel claims relating to trial counsel's failure to object to Asbury's testimony or request a cautionary instruction, lacks some merit. Based on the foregoing, we find that the underlying otherwise defaulted claim of Stewart therefore fails to meet his burden under Martinez. Consequently, federal review of this claim is barred.

**IV.**   <u>**Certificate of Appealability**</u>

Pursuant to 28 U.S.C. §2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. §2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. §2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." <u>Miller-El v. Cockrell</u>, 537 U.S. 322 (2003). Petitioner fails to demonstrate that a COA should issue.

The denial of a certificate of appealability does not prevent Stewart from appealing the order denying his petition so long as he seeks, and obtains, a certificate of appealability from the Third Circuit Court of Appeals. <u>See</u> Fed. R. App. P. 22(b)(1).

## V. __Conclusion__

For the reasons set forth above, the petition for writ of habeas corpus pursuant to 28 U.S.C. §2254 will be denied.

An appropriate order follows.



*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: February 9, 2021**
17-0893-01